UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CYNTHIA HILL, | ) | 1:06-cv-00801-SMS |
| | ) | |
| Plaintiff, | ) | ORDER DENYING DEFENDANT'S MOTION |
| v. | ) | FOR SUMMARY JUDGMENT (DOC. 19) |
| | ) | |
| SKYWEST AIRLINES, INC., | ) | ORDER OVERRULING DEFENDANT'S |
| | ) | OBJECTIONS AND DENYING REQUEST TO |
| Defendant. | ) | STRIKE EXPERT EVIDENCE (DOCS. 36- |
| | ) | 38) |
| | ) | |

Plaintiff is proceeding with a civil action in this Court. The matter has been referred to the Magistrate Judge for all proceedings, including the entry of final judgment, pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73(b), and Local Rule 73-301.

Pending before the Court is the motion of Defendant Skywest Airlines, Inc., for summary judgment, filed on July 6, 2007, with a memorandum of points and authorities, statement of undisputed facts, and supporting declarations of Kelly Storm-Bowles, Cynthia Ann Hoene, Kimberly I. McIntyre, and Latricia Foulger. On July 16, 2007, Plaintiff filed a memorandum in opposition, a response to the statement of undisputed facts, a separate statement of disputed facts, and declarations of Daniel R. Baradat, Diana Fairchild, and James E. Flynn. On August 3, 2007, Defendant filed

1

1  a reply, including a memorandum, a further declaration of
2  Kimberly I. McIntyre, statements responsive to the statements of
3  disputed and undisputed facts, and objections to the three
4  declarations filed by Plaintiff in opposition to the motion.

5      The motion came on regularly for hearing on August 10, 2007,
6  at 9:30 a.m. in Courtroom 7 before the Honorable Sandra M.
7  Snyder, United States Magistrate Judge. Kimberly I. McIntyre of
8  Kenney and Markowitz appeared on behalf of Defendant; Daniel
9  Robert Baradat appeared on behalf of Plaintiff. After argument
10 the matter was submitted to the Court.

11     Defendant's argument is that Plaintiff is legally and
12 factually precluded from establishing all of the elements of her
13 claim for negligence against Skywest because the undisputed facts
14 establish that Defendant carrier did not breach the heightened
15 duty of care owed to Plaintiff, or that Plaintiff has no evidence
16 which would support a reasonable inference that Plaintiff's fall
17 was foreseeable or that Defendant breached its duty of care.

18     Plaintiff contends that there are conflicts in the evidence
19 that give rise to material issues of fact; further, even absence
20 any conflict in the evidence as to a material issue, there are
21 conflicting inferences that rationally may be drawn from the
22 evidence with respect to a breach of duty.

23     I. Summary Judgment

24     Summary judgment is appropriate when it is demonstrated that
25 there exists no genuine issue as to any material fact, and that
26 the moving party is entitled to judgment as a matter of law.
27 Fed. R. Civ. P. 56(c). Under summary judgment practice, the
28 moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). It is the moving party's burden to establish that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. British Airways Board v. Boeing Co., 585 F.2d 946, 951 (9th Cir. 1978).

Where a party with the ultimate burden of persuasion at trial as to a matter moves for summary judgment, it must demonstrate affirmatively by evidence each essential element of its claim or affirmative defense and must establish that there is no triable issue of fact as to each essential element such that a rational trier of fact could render a judgment in its favor. Southern California Gas Co. v. City of Santa Ana, 336 F.3d 885, 888 (9th Cir. 2003). If a party moves for summary judgment with respect to a matter as to which the opposing party has the ultimate burden of persuasion at trial, then the moving party must show that the opposing party cannot meet its burden of proof at trial by establishing that there is no genuine issue of material fact as to an essential element of the opposing party's claim or defense; the moving party must meet the initial burden of producing evidence or showing an absence of evidence as well as the ultimate burden of persuasion. Nissan Fire Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1102 (9th Cir. 2000). In order to carry its burden of production, the moving party must either produce

3

evidence negating an essential element of the opposing party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. Id. (citing High Tech Gays v. Defense Indus. Sec. Clearance Office, 895 F.2d 563, 574 (9th Cir. 1990)). In order to carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact. Id.

However, "where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." Celotex Corp. v. Catrett, 477 U.S. 317, 323. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

4

586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits or admissible discovery material in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

   In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v.

1  Diebold, Inc., 369 U.S. 654, 655 (1962)(per curiam)).

2  Nevertheless, it is the opposing party's obligation to produce a

3  factual predicate from which an inference may be drawn. Richards

4  v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal.

5  1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Although the

6  Court must not weigh the evidence, the Court must draw reasonable

7  inferences; evidence that is too insubstantial or speculative may

8  be insufficient to establish the existence of a genuine issue of

9  material fact. Coca-Cola Co. v. Overland, Inc., 692 F.2d 1250,

10 1255 (9th Cir. 1982); Dept. of Commerce v. U.S. House of Rep., 525

11 U.S. 316, 334 (1999). To demonstrate a genuine issue, the

12 opposing party "must do more than simply show that there is some

13 metaphysical doubt as to the material facts." Matsushita, 475

14 U.S. at 586. A mere scintilla of evidence supporting the opposing

15 party's position will not suffice; there must be enough of a

16 showing that the jury could reasonably find for that party.

17 Anderson, 477 U.S. at 251-52. Where the record taken as a whole

18 could not lead a rational trier of fact to find for the nonmoving

19 party, there is no genuine issue for trial. Id. at 587.

20     The showings must consist of admissible evidence,

21 Hollingsworth Solderless Terminal Co. v. Turley, 622 F.2d 1324,

22 1335 n.9 (9th Cir. 1980), or pleadings, depositions, answers to

23 interrogatories, admissions, and affidavits or declarations, Fed.

24 R. Civ. P. 56(c). Affidavits shall be based on personal

25 knowledge, set forth such facts as would be admissible in

26 evidence, and show affirmatively that the affiant is competent to

27 testify to the matters stated therein. Fed. R. Civ. P. 56(e).

28 Sworn or certified copies of all papers or parts thereof referred

1   to in an affidavit shall be attached thereto or served therewith.

2   Id. Declarations pursuant to 28 U.S.C. § 1746 may be used with

3   the same force and effect as affidavits. Pollock v. Pollock, 154

4   F.3d 601, 611, n.20 (6th Cir. 1998). A plaintiff's verified

5   complaint may be considered as an affidavit in opposition to

6   summary judgment if it is based on personal knowledge and sets

7   forth specific facts admissible in evidence. Lopez v. Smith, 203

8   F.3d 1122, 1132 (9th Cir. 2000). Personal knowledge may be

9   inferred from declarations themselves, such as from facts

10  concerning a declarant's position and participation, Barthelemy

11  v. Air Line Pilots Ass'n, 897 F.2d 999, 1018 (9th Cir. 1990);

12  however, a court cannot draw an inference about facts not

13  specifically put in the record by a party, and a court will not

14  assume that general averments embrace specific facts needed to

15  sustain a complaint, Lujan v. National Wildlife Federation, 497

16  U.S. 871, 887 (1990). Unauthenticated documents cannot be

17  considered on a motion for summary judgment. Hal Roach Studios,

18  Inc. v. Richard Feiner and Co., 896 F.2d 1542, 1550 (9th Cir.

19  1990). Legal memoranda and oral argument are not evidence and do

20  not create issues of fact capable of defeating an otherwise valid

21  motion for summary judgment. British Airways Bd. v. Boeing Co.,

22  585 F.2d 946, 952 (9th Cir. 1978).

23      The Court is not obligated to consider matters that are in

24  the record but are not specifically brought to its attention; the

25  parties must designate and refer to specific triable facts. Even

26  in the absence of a local rule, for evidence to be considered,

27  the party seeking to rely on it must specify the fact by

28  indicating what the evidence is or says and must indicate where

1  it is located in the file. Although the Court has discretion in

2  appropriate circumstances to consider other material, it has no

3  duty to search the record for evidence establishing a material

4  fact. Carmen v. San Francisco United School Dist., 237 F.3d 1026,

5  1029 (9th Cir. 2001).

6      A party moving for summary judgment is entitled to the

7  benefit of any relevant presumptions that support the motion

8  provided that the facts giving rise to the presumption are

9  undisputed. Coca-Cola Co. v. Overland, Inc., 692 F.2d 1250, 1254

10  (9th Cir. 1982).

11      II. Governing Tort Principles

12      In a diversity case, the substantive law applied by the

13  federal court is generally state law, and the federal courts

14  generally must follow the conflict of laws rules prevailing in

15  the states in which they sit. Klaxon Co. v. Stentor Electric Mfg.

16  Co., 313 U.S. 487, 496-97 (1941). If state law governs a

17  particular issue in a diversity case, the court must then

18  determine the content of the applicable state law; the decision

19  of the state's highest court is generally the definitive

20  statement of the state's law. Commissioner v. Estate of Bosch,

21  387 U.S. 456, 465 (1967).

22      Cal. Civ. Code § 2100 provides:

23      A carrier of persons for reward must use the utmost
   care and diligence for their safe carriage, must
24  provide everything necessary for that purpose,
   and must exercise to that end a reasonable degree
25  of skill.

26  The common carrier is not an insurer of the passengers' safety;

27  rather, the degree of care and diligence that they must exercise

28  is such as can reasonably be exercised consistent with the

character and mode of conveyance adopted and the practical operation of the business of the carrier. <u>Gomez v. Superior Court</u>, 35 Cal.4th 1125, 1130 (2005). The carrier is responsible for even the slightest negligence and is required to do all that human care, vigilance and foresight reasonably can do under given circumstances. <u>Acosta v. Southern Cal. Rapid Transit District</u>, 2 Cal.3d 19, 27 (1970) (upholding as supported by sufficient evidence a verdict of liability against a bus carrier where the bus began to move before the plaintiff had reached a seat, and the bus drove at a speed that required a sudden stop for a visible pedestrian in a crosswalk; the court noted that a jury reasonably could conclude that the bus driver had not acted with the utmost care in driving the bus). The duty extends to the passenger during the journey and until the passenger has safely departed from the carrier's vehicle and has reached a place outside the sphere of any activity of the carrier which might reasonably constitute a mobile or animated hazard to the passenger. <u>Marshall v. United Airlines</u>, 35 Cal.App.3d 84, 86-87 (1973). The carrier must exercise as high a degree of care in affording passengers a reasonable opportunity to alight in safety as in carrying them safely; the carrier must provide a safe and convenient means of access and departure, and must do all that human care, vigilance, and foresight reasonably can do under all the circumstances to prevent accidents to passengers. <u>McBride v. Atchison, Topeka & Santa Fe Railway Co.</u>, 44 Cal.2d 113, 116-118 (1955); <u>Lopez v. Southern California Rapid Transit Dist.</u>, 40 Cal.3d 780, 785 (1985). Whether a carrier, by not inspecting and cleaning the steps of a pullman car, breached its duty to

exercise utmost care and diligence was improperly determined on
nonsuit, and instead was held to be a question for the jury where
a passenger alighting from a pullman car was thrown to the ground
where his crutch came into contact with a wet cigar butt on the
steps of the car. McBride v. Atchison, Topeka Y& Santa Fe Railway
Co., 44 Cal.2d at 118. The court reaffirmed in McBride that
negligence is a question of fact for the jury, even when there is
no conflict in the evidence, if different conclusions upon the
subject can rationally be drawn from the evidence. Id. at 118.
The mere fact that the passenger exercises some control over
operative factors does not change the relationship or necessarily
absolve the carrier from liability where the control is within
the reasonable contemplation of the contract of carriage.
McIntyre v. Smoke Tree Ranch Stables, 205 Cal.App.2d 489 (1962)
(plaintiff's holding the reins of the mule not determinative);
Kline v. Santa Barbara Consolidated Railway Co., 150 Cal. 741
(1907) (plaintiff's failing to hold on to a hand-rail while
riding on a street-railway car); Jamison v. San Jose & Santa
Clara Railway Co., 55 Cal. 593, 598-99 (upholding a judgment for
the passenger, finding no contributory negligence as a matter of
law, reaffirming the province of the jury in determining breach
of duty, and noting that it was not the duty of the passenger to
call for lights to illuminate a narrow, unprotected walkway
between cars); Teale v. Southern Pac. Co.August 6, 2007, 20
Cal.App. 570, 581-82 (1912) (carrying small bags down steps
provided effected by a healthy woman advanced in years found not
to have been contributory negligence as a matter of law despite
presence of arguably more reasonable alternatives). Such

1   circumstances may be pertinent to a consideration of issues of

2   comparative fault, but they do not reduce the duty of care

3   imposed by law upon the carrier. See, McIntrye v. Smoke Tree

4   Ranch Stables, 205 Cal.App.2d at 493 (referring to contributory

5   negligence). A carrier's heightened standard of care may require

6   the carrier to warn passengers of existing and forthcoming

7   dangers. See, Jamison v. San Jose & Santa Clara Railway Co., 55

8   Cal. 593, 597-98 (1880).

9       III. Objections

10      As stated during argument, the Court overrules Defendant's

11  objections to evidence or considers the objections moot, and the

12  Court declines to strike experts' reports or declarations because

13  of tardy submission of expert evidence.

14      A. Deposition Excerpts

15      Defendant objects to the deposition excerpts that are

16  attached to the declaration of Baradat, submitted in opposition

17  to the motion, on the basis of inadequate foundation and lack of

18  authentication.

19      As the Court noted at hearing, a deposition or an extract

20  therefrom is authenticated in a motion for summary judgment when

21  it identifies the names of the deponent and the action and

22  includes the reporter's certification that the deposition is a

23  true record of the testimony of the deponent. Orr v. Bank of

24  America, NT & SA, 285 F.3d 764, 774 (9th Cir. 2002). Upon

25  objection, authentication or identification is a condition

26  precedent to admissibility determined pursuant to Fed. R. Evid.

27  104(b), Ricketts v. City of Hartford, 74 F.3d 1397, 1409 (2nd Cir.

28  1996); the Court makes a preliminary determination as to whether

11

1  there is sufficient evidence to sustain a jury finding of

2  authenticity; ultimate resolution of whether evidence is

3  authentic calls for a factual determination by the trier of fact.

4  United States v. Branch, 970 F.2d at 1370. Authentication

5  requirements are satisfied by evidence sufficient to support a

6  finding that the matter in question is what its proponent claims,

7  Fed. R. Evid. 901(a). It is sufficient if there is enough support

8  in the record to warrant a reasonable person in determining that

9  the evidence is what it purports to be; thereafter, the question

10  of weight to be given to the evidence is left to the finder of

11  fact. United States v. Holmquist, 36 F.3d 154, 167 (1st Cir.

12  1994).

13      Although Plaintiff's initial showing was inadequate,

14  Defendant's objections are moot because copies of deposition

15  transcripts themselves have been submitted to the Court.

16  Considering all of the evidence and the facts before the Court,

17  the Court finds that an adequate foundation has been laid, and

18  the deposition excerpts are adequately authenticated.

19          B. Expert Evidence

20      Defendant objects to the declaration of James B. Flynn

21  submitted by Plaintiff in opposition to the motion.

22      Flynn opined that Storm-Bowles was negligent in the

23  application of basic safety principles because she failed to

24  provide for Plaintiff's obvious need for help in exiting the

25  plane in a safe manner. Flynn authored a report, Ex. B to his

26  declaration, in which he reviewed specified items of evidence and

27  information, concluded that Storm-Bowles should have decided that

28  an unacceptable risk of Plaintiff's not being able to negotiate

the stairs safely was presented by the obvious dangers presented
by Plaintiff's heavy and numerous belongings, assertedly apparent
partial or complete inability to use handrails, and blocking of
her view by things being carried; the attendant should have
insisted in the strongest of terms that she be allowed to provide
assistance, instead of following a policy to offer assistance
only upon passenger requests; and the attendant failed to provide
for an obvious need for help. Defendant, faced with foreseeable
falls, was required to create and implement policies to reduce or
eliminate potential injury associated with deplaning; Storm-
Bowles' choice not to help Plaintiff contributed to the
accident's occurrence.

Defendant objects that this opinion lack foundation, is not
supported by the evidence in the case, hearsay, is unnecessary,
is beyond the witness's qualifications, and constitutes an
impermissible opinion on an ultimate issue of law. Defendant
specifically objects to the conclusion regarding the unacceptable
risk and awareness of Plaintiff's lack of a free hand to use
handrails on essentially the same grounds as well as speculation.
Defendant argues that Flynn is an automobile accident
reconstructionist without any demonstrated familiarity or
knowledge with the aviation industry in any pertinent respect.

Defendant objects to the declaration of Diana Fairechild,
who purports to be an experienced flight attendant, who opined
that Storm-Bowles was negligent in not assisting Plaintiff in
deplaning after she saw Plaintiff stumble because her conduct
fell below the professional standards of flight attendants.
Defendant objects because the opinion was not timely disclosed as

13

1  required by Fed. R. Civ. P. 37(c)(1); Defendant further objects

2  on the grounds that in various respects, the declaration lacks

3  foundation, misstates the evidence, is not authenticated, lacks

4  expert qualification, is unnecessary, and is based on

5  speculation.

6       With respect to what is in effect a renewed motion to

7  strike expert evidence offered by Plaintiff because Plaintiff's

8  designation of expert evidence was tardily submitted, the Court

9  notes that the experts' reports are simple and straightforward.

10 The Court finds that the evidence does not support a conclusion

11 that in their process of providing expert opinions, Plaintiff's

12 experts took advantage of any of Defendant's expert evidence. The

13 Court thus denies the request to strike this evidence. This

14 denial is without prejudice to raising the issue as a motion in

15 limine.

16      Insofar as Defendant asserts that either or both experts do

17 not have the qualifications to render their opinions, or that

18 what they submitted lacks foundation, credentialing, or

19 reliability, the Court DENIES the objection without prejudice to

20 bringing a motion in limine based on Daubert principles in

21 connection with which there will be an opportunity for a response

22 and full briefing.

23      To the extent that Defendant argues that the opinions lack

24 foundation as not supported by, or as contradicted by, the

25 evidence submitted in this case, or that the opinions are

26 unnecessary, the Court concludes that the objections are not

27 well-taken as framed. Most of the pertinent facts are not subject

28 to dispute; rather, the parties disagree in their

14

1  characterizations of the evidence, or as to the appropriate
2  inferences to be drawn therefrom. It is for the trier to
3  determine the facts and the inferences to be drawn therefrom. To
4  the extent that Defendant argues that the opinions are
5  speculative, the Court finds that there is showing at this point
6  that the experts engaged in anything other than appropriate
7  contemplation, consideration, surmise, and abstract reasoning.

8      Finally, the Court notes that it for the narrow purposes of
9  this motion, it is unnecessary for the Court to resolve these
10 objections because even if the declarations of the experts are
11 not considered, the facts present a basis upon which a rational
12 trier of fact could draw reasonable inferences supporting a
13 conclusion that Defendant breached its high duty of care and was
14 negligent.

15     IV. <u>Facts</u>

16     Most of the pertinent facts are agreed upon; the evidence is
17 not materially disputed, but the parties's characterizations of
18 the evidence are at odds, and the parties disagree as to the
19 drawing of inferences in support of Plaintiff's claim.

20     It is undisputed that on March 24, 2006, Plaintiff, a
21 ticketed passenger who had flown to Fresno from Los Angeles on an
22 aircraft owned and operated by Defendant, a carrier for hire, was
23 injured when she fell down while carrying a computer bag
24 containing a laptop computer estimated by Plaintiff to weigh
25 thirty or forty pounds, a backpack purse, and a coat down the
26 stairs that were provided by Defendant and which Plaintiff used
27 for deplaning.

28     The aircraft was an Embraer EMB 120 Brasilia, a thirty-seat

15

turboprop regional airliner.

The evidence reveals that Plaintiff had flown between Los Angeles and Fresno an average of ten times per year since 2002 on various carriers that used small planes that in turn provided for exiting stairs that came down from the plane itself; she had sufficient familiarity with such stairs. Although Plaintiff had not previously gotten stuck, tripped, fallen, or had an accident on such stairs, she testified that it was difficult to get up and down the stairs because they were narrow and steep; in boarding the plane she had the bag in front of her, and it was a difficult quick climb, although she could not remember if she held on to a hand rail (Dep. pp. 90-91, 112-13, 152.).

There is no dispute as to whether or not Plaintiff was in compliance with regulations in boarding the plane with her three items in the sense that she was within the limit of carry-on bags. (Undisp. Facts, no. 5.) Skywest Standard Practice 1118 sets forth the inflight operations manual carry-on baggage program; at par. 3, subpar. (B), it states that passengers are allowed to carry on one carry-on bag and one personal item; pursuant to par. 2(b), coats and other items and devices are allowed to be carried on the aircraft without being counted against the personal item allowance.

After Plaintiff tried unsuccessfully to fit her computer bag in the overhead compartment or under the seat, a conversation ensued between the flight attendant, Kelly Storm-Bowles, and Plaintiff. Plaintiff testified that Storm-Bowles told Plaintiff that the bag would have to be ground-checked because it did not fit. Plaintiff responded that she did not want it ground-checked

because she had two computers in it;[1] Plaintiff smiled and told
the attendant that if the attendant wanted it down there, the
attendant could carry it down there. Plaintiff expressed that she
did not want the bag checked. Plaintiff did not recall using the
word "precious" in describing her computers. (Dep. Pltf. pp. 114-
17, 125-26.) The attendant returned, suggested that the bag could
be put on a seat, and put the bag on a seat and strapped it in
towards the back of the plane. (Id. pp. 117-18.) Otherwise, no
attempt was made to check any of Plaintiff's baggage by
Defendant's personnel in Los Angeles. (Id. p. 126.)

The attendant characterized her own conduct as an offer or
advice that the bag could be ground checked and stowed in cargo,
and she characterized Plaintiff's conduct as an absolute refusal
of an offer to stow; Plaintiff said the two computers in the bag
were precious and that she did not want anything to happen to
them. (Decl. ¶ 5, 6, Dep. p. 6.)

The attendant testified that she knew that Plaintiff's
computer bag was quite heavy. (Dep. pp. 6-7.)

Plaintiff did not know and did not recall hearing the
attendant announcing to passengers to watch their step and hold
on to the railing as they descended; she could have done so and
Plaintiff did not recall. However, Plaintiff did specifically
recall her making announcements, and Plaintiff remembered safety
mentioned at take-off, and a welcome to Fresno when landing. Her
knowledge of what was said was also based on her experience as a
traveler pursuant to which she knew what was said. She thought

---

[1] Plaintiff testified, however, that only one computer was in it. (Dep. pp. 83-84.)

1  she was paying attention to the announcements made after landing,
2  but one could not hear the speaker well. (Pltf. Dep. pp. 128-29.)

3      The attendant declared that because she had observed
4  Plaintiff coming up the aisle with her personal effects and saw
5  her trip over her coat, which had been draped over her arm, and
6  further because the attendant knew that Plaintiff's bag was
7  heavy, the attendant asked Plaintiff, "Can I help you with
8  anything?" Plaintiff responded, "No, I've got it," then adjusted
9  her coat by hiking it up further over her arm, and she proceeded
10 to exit the plane. (Decl. ¶ 11.)

11     Plaintiff testified that she was not sure if the attendant
12 asked her if she needed assistance after Plaintiff had gathered
13 her belongings; she did not specifically remember that, although
14 she remembered their short conversation at the back of the plane.
15 (Dep. p. 137.) She did not recall the attendant telling her to
16 watch out for her coat; it was possible that Plaintiff readjusted
17 the coat further up over her arm. (Dep. p. 138.)

18     The attendant declared that upon landing she gave an
19 announcement that included an admonition to exercise care and use
20 handrails when exiting the airplane; she stated that she
21 announced that safety was their first priority, and they asked
22 that the passengers hold on to the handrails and watch their step
23 as they deplaned; should they require any assistance, they should
24 please not hesitate to ask. (Decl. ¶ 8.)

25     Before deplaning, the attendant was at the front of the
26 plane, adjacent to the door, exit stairs and cockpit, and
27 Plaintiff heard something to the effect of an announcement from
28 the attendant stating that if one required assistance in

1   deplaning to let her know. (Pltf.'s Dep. p. 129-30.) However,
2   Plaintiff testified that she was not sure if after Plaintiff
3   gathered her belongings, the attendant asked Plaintiff if she
4   needed assistance; Plaintiff did not specifically remember the
5   attendant speaking to her and asking if she needed assistance.
6   (Dep. p. 137.) Plaintiff had no recollection. (Dep. p. 137.)

7        Plaintiff recalled being the last or next-to-last person off
8   the plane; she personally retrieved her computer bag from the
9   back of the plane and thanked the attendant at that time.
10  Plaintiff carried her backpack purse with one strap over her left
11  shoulder; her coat was over her left arm. (Pltf.'s Dep. pp. 130-
12  31, 139-40.) She picked up the computer bag by its short handle
13  with her right hand, and she carried it with one hand in front of
14  her. She had trouble negotiating her way down the aisle because
15  the aisle was so narrow, and the bag was nearly as wide as the
16  aisle; she had to turn the bag to feed it through, and she saw
17  the flight attendant as she did so. Plaintiff stumbled when the
18  corner of the computer bag in front of her hit the seat, but she
19  did not trip. She did not recall her coat dragging on the ground.
20  (Dep. pp. 131-35.) When she was ready to deplane, her left hand
21  was free except for holding her coat with her forearm. (Dep. p.
22  143.)

23       The attendant declared that Plaintiff came up the aisle
24  after retrieving her computer bag; Plaintiff had her personal
25  effects, and her coat was draped over her arm. The attendant
26  observed Plaintiff trip over her coat. (Decl. ¶ 10-11.) The
27  attendant had also lifted the computer bag and knew that it was
28  heavy. (Decl. ¶ 11.)

1  Plaintiff did not remember the attendant repositioning
2  herself at the front door of the plane. (Dep. p. 135-36.)

3  The attendant declared that she stood at the cockpit door
4  next to the main cabin, assisting passengers in any way necessary
5  as they deplaned; Plaintiff was the last to deplane. (Decl. ¶¶ 9-
6  10.)

7  Ramp supervisor Andres Nazario testified that he made eye-
8  contact with the attendant and was ready to provide any required
9  assistance. (Dep. pp. 7-8.)

10  The flight attendant saw Plaintiff fall as she attempted to
11  descend the main cabin door exist stairs; Mr. Nazario, the ramp
12  supervisor, was positioned near the bottom of the stairs, and he
13  rushed to Plaintiff's aid and radioed for assistance. (Decl. ¶
14  12.) Plaintiff testified that as she started down the stairs, she
15  did not make, or missed, the first step because her computer bag,
16  which was being held with her right hand, caught, and Plaintiff
17  fell. Plaintiff did not know what portion of her bag caught, or
18  what exactly her bag struck on the airplane. (Dep. pp. 153-61.)
19  Plaintiff described the stairs as having maybe five or six steps
20  and railings. (Dep. 149-50.)

21  Plaintiff testified that she did not ask the flight
22  attendant for assistance at any time before beginning down the
23  stairs. (Dep. p. 141.) She did not feel that she needed
24  assistance going down the stairs, and she had made her judgment
25  that she would be able to make it down. (Tr. 141-42.)

26  The flight attendant testified that her job included
27  assisting passengers in any way that was necessary, that they
28  asked for. (Dep. p. 10.) If in her job she saw that a deplaning

passenger was having difficulty with luggage, she would assist them. (Dep. p. 10.) Storm-Bowles declared that as a flight attendant, the safety of the passengers was her responsibility. (Decl. ¶ 3.) Although federal aviation and Skywest regulations prohibit flight attendants from leaving the plane to assist passengers who are deplaning, it is permissible to follow the last passenger deplaning, such as Plaintiff, down the stairs and assist with carry-on items. (Decl. ¶¶ 9-10.) Pilot Thomas Wassmer testified that during his employment with Defendant since July 28, 2005, he knew of a ramp that was used for deplaning purposes that rolls up to the airplane and sits in the doorway and allows passengers to walk down the ramp; he did not know why or when the ramp was used, although on further examination he stated it was to deplane handicapped people. (Dep. pp. 7-11.)

Plaintiff had two bloody Mary cocktails on the plane from Chicago to Los Angeles but was not feeling the effects when in Los Angeles she boarded the flight to Fresno. (Pltf. Dep. pp. 121-23.)

IV. <u>Analysis</u>

There is uncertainty as to whether or not the attendant specifically asked Plaintiff if she needed help as she was about to deplane; although the attendant specifically testified she did so and received a negative response, the attendant also testified in a manner that could be interpreted to mean that she helped by responding to requests for help. Plaintiff had no recollection of a specific offer or inquiry, although she recalled the remainder of their interaction in some detail. A rational trier of fact might determine that no specific request was actually made of

21

1  Plaintiff. Further, even if a verbal query regarding assistance
2  were found to have been made, the Court is mindful of the high
3  standard of care set forth by the pertinent state substantive law
4  and the need to draw every possible, favorable, rational
5  inference in the Plaintiff's favor. The record contains the
6  attendant's own testimony to the effect that the safety of
7  passengers was her responsibility, her job included assisting
8  passengers in any way that was necessary, and that if in her job
9  she saw that a deplaning passenger was having difficulty with
10 their luggage, she would assist them. (Dep. p. 10.) The record
11 contains evidence of the attendant's announcements, from which a
12 rational trier could infer that Defendant set a very high
13 standard of care with respect to passenger safety. The record
14 also permits a reasonable inference that there existed other,
15 more helpful options of conduct on the part of the attendant
16 besides permitting Plaintiff to walk down the stairs fully
17 burdened. This is the stuff of trials--allowing the trier of fact
18 to weigh and evaluate the evidence, draw inferences, and make
19 ultimate findings. It is for the trier of fact in this case to
20 resolve the conflicting inferences that may be drawn from the
21 evidence regarding whether or not Defendant breached its duty of
22 care.

23      V. <u>Disposition</u>

24      Accordingly, it IS ORDERED that

25      1) Defendant's motion for summary judgment IS DENIED; and

26      2) Defendant's objections to evidence ARE OVERRULED, without
27 prejudice to raising them by motions in limine in a manner
28 consistent with this order; and

3) Defendant's request to strike or not to consider Plaintiff's expert evidence because of tardy submission of expert evidence by Plaintiff IS DENIED.

IT IS SO ORDERED.

Dated:    **August 13, 2007**            **/s/ Sandra M. Snyder**
                                    UNITED STATES MAGISTRATE JUDGE