UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYNTHIA HILL,<br><br>               Plaintiff,<br><br>   v.<br><br>SKYWEST AIRLINES, INC.,<br><br>               Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br> | 1:06-cv-00801-SMS<br><br>ORDER GRANTING IN PART AND<br>DENYING IN PART DEFENDANT'S<br>MOTION FOR JUDGMENT ON THE<br>PLEADINGS (Doc. 54)<br><br>ORDER DIRECTING THE PARTIES TO<br>MEET AND CONFER IN PREPARATION<br>FOR, AND for COUNSEL TO ARRANGE<br>AND PARTICIPATE IN, A TELEPHONIC<br>STATUS CONFERENCE<br>**Date: November 7, 2008**<br>**Time: 3:30 p.m.** |

Plaintiff is proceeding with a civil action in this Court. The matter has been referred to the Magistrate Judge for all proceedings, including the entry of final judgment, pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73(b), and Local Rule 73-301.

Pending before the Court is the motion of Defendant for judgment on the pleadings, filed on October 10, 2008, and opposed by Plaintiff on October 20, 2008. The parties submitted supplemental letter briefs on October 30, 2008, pursuant to the Court's request. The motion came on regularly for hearing on October 31, 2008, at 9:40 a.m. in Courtroom 7 before the Honorable Sandra M. Snyder, United States Magistrate Judge. Jason

Bell and David Edwards appeared on behalf of Plaintiff; Kenneth Markowitz, Kimberly I. McIntyre, and Kim Spears appeared on behalf of Defendant. After argument the matter was submitted to the Court.

I. <u>Background</u>

Plaintiff filed a complaint in Fresno County Superior Court on May 9, 2006, for general negligence; a cause of action for products liability was also checked, but no allegations concerning it appeared to be set forth in the complaint. (Notice of Removal, Ex. A-2.) In the complaint, it was alleged that Defendants were common carriers holding themselves out to the public (<u>id.</u>, Ex. A-5); Plaintiff was a paying passenger on Defendant's airplane who, while attempting to exit the airplane with her personal effects, was caused to fall and suffer injuries due to Defendants' failure to use the highest care, vigilance, and foresight owed to Plaintiff in controlling, protecting, assisting, supervising, directing, advising and overseeing Plaintiff' exiting of the plane, and due to Defendant's failure to use reasonable skill to provide everything necessary for Plaintiff's safe transportation. (<u>Id.</u>, Ex. A-5.) Further, Defendants were negligent and careless with regard to the ownership, operation, maintenance, staffing, supervision, control, and service of their airplane and its appurtenances, which further caused Plaintiff's injuries. (<u>Id.</u>, Ex. A-6.)

Defendant Skywest Airlines, Inc., filed an answer in the Fresno Superior Court on June 22, 2006, in which Defendant denied all the factual allegations and raised numerous affirmative defenses, including preemption by the Federal Aviation Act, the

1 Air Carrier Access Act of 1986, and the Airline Deregulation Acts

2 of 1958 and 1978, as well as by the federal government's

3 consistent, complete, and pervasive regulation of airline

4 operations to the extent that Plaintiff seeks to apply a state

5 law standard of care in place of the federal standard of care

6 codified in the Federal Aviation Regulations. (Answer, ¶ 11,

7 tenth affirmative defense, Notice of Removal, Ex. C-4.) Defendant

8 also claimed the affirmative defense of conflict between specific

9 federal laws and regulations, on the one hand, and state law on

10 the other, in the form of preemption as a matter of law. (Id. at

11 ¶ 12 (eleventh affirmative defense).)

12      II. <u>Timeliness</u>

13      The Court rejects Plaintiff's challenge to the motion on the

14 ground of untimeliness. The dispositive motion deadline has

15 passed, a summary judgment motion was argued and considered

16 pursuant to the state law standard of care, and Defendant's

17 office even participated in the <u>Montalvo</u> case concerning

18 preemption, but it did not bother to bring the decision to the

19 Court's attention for almost a year. However, the <u>Montalvo</u> case

20 was not yet decided when the deadlines passed. Further, the Court

21 notes that the death of defense counsel a year ago contributed to

22 the delay in raising the preemption issue, although it does not

23 explain the entire extent of the delay.

24      A court has inherent power to control its docket and the

25 disposition of its cases with economy of time and effort for both

26 the Court and the parties. <u>Landis v. North American Co.</u>, 299 U.S.

27 248, 254-255 (1936); <u>Ferdik v. Bonzelet</u>, 963 F.2d 1258, 1260 (9th

28 Cir. 1992). Further, the Court is mindful of the policy to decide

1  cases on their merits where possible. The parties and the Court

2  have invested considerable resources with respect to this case.

3  The Court exercises its discretion in this case to permit the

4  motion at the present time and in its present form.

5      III. <u>Legal Standards</u>

6      Fed. R. Civ. P. 12(c) provides that after the pleadings are

7  closed, but early enough not to delay the trial, a party may move

8  for judgment on the pleadings. Judgment on the pleadings is

9  appropriate when, even if all material facts in the pleading

10 under attack are true, the moving party is entitled to judgment

11 as a matter of law. <u>Merchants Home Delivery Service, Inc. v.</u>

12 <u>Frank B. Hall & Co.</u>, 50 F.3d 1486, 1488 (9th Cir. 1995). The

13 standard on a motion for judgment on the pleadings is the same as

14 that applied on a motion pursuant to Fed. R. Civ. P. 12(b)(6).

15 <u>Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.</u>, 896 F.2d

16 1542, 1550 (9th Cir. 1990). The allegations of the nonmoving party

17 must be accepted as true, while any allegations made by the

18 moving party that have been denied are assumed to be false. <u>Hal</u>

19 <u>Roach Studios</u>, 896 F.2d at 1550. The facts are viewed in the

20 light most favorable to the non-moving party and all reasonable

21 inferences are drawn in favor of that party. <u>General Conference</u>

22 <u>Corp. of Seventh-Day Adventists v. Seventh Day Adventist</u>

23 <u>Congregation Church</u>, 887 F.2d 228, 230 (9th Cir. 1989); <u>George W.</u>

24 <u>v. United States Dept. of Education</u>, 149 F.Supp.2d 1195, 1201

25 (E.D. Cal. 2000). All inferences reasonably drawn from the facts

26 must be construed in favor of the responding party. <u>George W.</u>,

27 149 F.Supp.2d at 1201.

28     With respect to stating a claim, "Rule 8(a)'s simplified

pleading standard applies to all civil actions. <u>Swierkiewicz v.</u>
<u>Sorema N. A.</u>, 534 U.S. 506, 512 (2002); Fed. R. Civ. P. 8(a).
Pursuant to Rule 8(a), a complaint must contain "a short and
plain statement of the claim showing that the pleader is entitled
to relief...." Fed. R. Civ. P. 8(a). "Such a statement must
simply give the defendant fair notice of what the plaintiff's
claim is and the grounds upon which it rests." <u>Swierkiewicz</u>, 534
U.S. at 512. However, "the liberal pleading standard... applies
only to a plaintiff's factual allegations." <u>Neitze v. Williams</u>,
490 U.S. 319, 330 n.9 (1989).

In reviewing a complaint under this standard, the Court must
accept as true the allegations of the complaint in question,
<u>Hospital Bldg. Co. v. Trustees of Rex Hospital</u>, 425 U.S. 738, 740
(1976), construe pleadings liberally in the light most favorable
to the Plaintiff, <u>Resnick v. Hayes</u>, 213 F.3d 443, 447 (9th Cir.
2000), and resolve all doubts in the Plaintiff's favor, <u>Jenkins</u>
<u>v. McKeithen</u>, 395 U.S. 411, 421 (1969).

Although a complaint attacked by a Rule 12(b)(6) motion to
dismiss does not need detailed factual allegations, a plaintiff
does not meet his or her obligation to provide the grounds of
entitlement to relief by supplying only conclusions, labels, or a
formulaic recitation of the elements of a claim. <u>Bell Atlantic</u>
<u>Corp. v. Twombly</u>, 127 S.Ct. 1955, 1964-65 (2007). Factual
allegations must be sufficient, when viewed in light of common
experience, to raise a right to relief above the speculative
level and to provide plausible grounds to suggest and infer the
element, or to raise a reasonable expectation that discovery will
reveal evidence of the required element. <u>Bell</u>, 127 S.Ct. at 1965.

1  Once a claim has been stated adequately, it may be supported by

2  showing any set of facts consistent with the allegations of the

3  complaint, and it may not be dismissed based on a court's

4  assessment that the plaintiff will fail to find evidence to

5  support the allegations or prove the claim to the satisfaction of

6  the finder of fact. <u>Bell</u>, 127 S.Ct. at 1969.

7      If the Court determines that the complaint fails to state a

8  claim, leave to amend should be granted to the extent that the

9  deficiencies of the complaint can be cured by amendment. <u>Lopez v.</u>

10 <u>Smith</u>, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc).

11     Here, Plaintiff has stated a claim for negligence, part of

12 which relates to a claim of breach of the state standard under

13 Cal. Civ. Code § 2100, and part of which appears to allege more

14 general carelessness with respect to the airplane or equipment;

15 Plaintiff has not specifically pleaded that Defendant's failure

16 to assist Plaintiff in exiting the airplane or any other conduct

17 constituted careless operation of the plane, or was otherwise

18 actionable pursuant to a federal standard.

19     IV. <u>Preemption of Cal. Civ. Code § 2100 by the FAA and</u>
            <u>Related Regulations</u>

20     Defendant argues that any claim based on the standard of

21 care set forth in Cal. Civ. Code § 2100[1] is preempted by the

22 Federal Aviation Act of 1958 (FAA), 49 U.S.C. § 40103, and by

23 regulations promulgated pursuant to it.

24     Section 40103 provides that the United States government has

25 exclusive sovereignty of airspace of the United States, and that

26

27 _____

    [1] It is this standard pursuant to which the motion for summary judgment was brought by Defendant. Section
28 2100 provides that a carrier of persons for reward must use the utmost care and diligence for their safe carriage, must
    provide everything necessary for that purpose, and must exercise to that end a reasonable degree of skill.

1  the Administrator of the Federal Aviation Administration shall
2  develop plans and policy for the use of the navigable airspace
3  and assign by regulation or order the use of the airspace
4  necessary to ensure the safety of aircraft and the efficient use
5  of airspace. The administrator shall also prescribe air traffic
6  regulation of the flight of aircraft for navigating and
7  protecting aircraft, protecting people and things on the ground,
8  using the airspace efficiently, and preventing collision between
9  aircraft and other objects. Section 40104 also states that the
10 administrator shall encourage the development of civil
11 aeronautics and safety of air commerce in and outside the United
12 States.

13      Authority in this circuit establishes that the FAA and
14 related regulations preempt the application of state standards of
15 care in actions for injuries relating to airplane safety. In
16 Montalvo v. Spirit Airlines, 508 F.3d 464, (9th Cir. 2007), the
17 court upheld a district court's dismissal of a suit premised upon
18 a state-created duty to warn of the dangers of deep vein
19 thrombosis (DVT) on the ground of preemption. The Court concluded
20 that the statute and regulations preempted a claim pursuant to
21 state law concerning the standard of care with respect to pre-
22 flight warnings of the danger of DVT because the statute and
23 regulations occupied the entire field of aviation safety by
24 establishing complete and thorough safety standards for air
25 travel that are not subject to supplementation by, or variation
26 among, state laws. Montalvo, 508 F.3d at 468.

27      In Montalvo, the court reviewed the general principles of
28 preemption before finding preemption by the vehicle of field

7

preemption in the case before it:

It is well-established that Congress has the power to preempt state law. U.S. Const. Art. Vi,, cl. 2; Cipollone v. Liggett Group, Inc., 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). It may do so expressly or impliedly. Cipollone, 505 U.S. at 516, 112 S.Ct. 2608. Congress' intent may be "explicitly stated in the statute's language or implicitly contained in its structure and purpose." (quoting Jones v. Rath Packing Co., 430 U.S. 519, 525, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1997)) Id. Nothing in the FAA expressly preempts state regulation of air safety, so preemption, if any, must be implied.

There are two types of implied preemption: conflict preemption and field preemption. Courts may find conflict preemption when a state law actually conflicts with federal law or when a state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress in enacting the federal law. See Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 95, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983) (holding that a state law was preempted by ERISA insofar as the state law prohibited practices that were lawful under ERISA); Crosby v. Nat'l Foreign Trade Council, 530 U.S. 363, 373, 120 S.Ct. 2288, 147 L.Ed.2d 352 (2000). Implied preemption exists when federal law so thoroughly occupies a legislative field "as to make reasonable the inference that Congress left no room for the States to supplement it." Cipollone, 505 U.S. at 516, 112 S.Ct. 2608 (citing Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 153, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982)). Thus, field preemption occurs when Congress indicates in some manner an intent to occupy a given field to the exclusion of state law. Cipollone, 505 U.S. at 516, 112 S.Ct. 2608. In this case, we conclude that Congress has indicated its intent to occupy the field of aviation safety.

While the comprehensiveness of a statute is one indication of preemptive intent, it alone is generally not sufficient to find that Congress intended to occupy the entire field. Skysign Int'l, Inc. v. Honolulu, 276 F.3d 1109, 1117 (9th Cir.2002) (citing Geier v. American Honda Motor Co., 529 U.S. 861, 884, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000)). We may, however, also look to the pervasiveness of the regulations enacted pursuant to the relevant statute to find preemptive intent. Fidelity Fed. Sav. & Loan Ass'n, 458 U.S. at 153 ("Federal regulations have no less preemptive effect than statutes."). This is because "[w]here ... Congress has entrusted an agency with the task of promulgating regulations to carry out the purposes of a statute, as part of the preemption analysis we must consider whether the regulations evidence a desire to occupy a field completely." R.J. Reynolds Tobacco Co.

8

v. Durham County, 479 U.S. 130, 149, 107 S.Ct. 499, 93
L.Ed.2d 449 (1986) (citation omitted). As a result, a
regulation's preemptive force does not depend on
express Congressional authorization to displace state
law. Id. Instead, when an agency administrator
promulgates pervasive regulations pursuant to his
Congressional authority, we may infer a preemptive
intent unless it appears from the underlying statute or
its legislative history that Congress would not have
sanctioned the preemption. Id.
     Here, the regulations enacted by the Federal
Aviation Administration, read in conjunction with the
FAA itself, sufficiently demonstrate an intent to
occupy exclusively the entire field of aviation safety
and carry out Congress' intent to preempt all state law
in this field.  (Emphasis added.)

Montalvo, 508 F.3d at 470-71.

     The court in Montalvo considered that the matter of federal

airspace was historically an area dominated by federal interests

and federal presence. Id. at 471. Further, the purpose, history,

and language of the FAA demonstrated an intent to have a single,

uniform system for regulating aviation safety because the Act

came into being in response to a series of fatal air crashes

between civil and military aircraft operating under separate

flight rules. In order to avoid future disasters and to promote

safety in aviation and thereby protect the lives of persons who

travel on board aircraft, Congress enacted the FAA in an effort

to create and enforce one unified system of flight rules. Id.

     Further, the regulations codified in Title 14 of the Code of

Federal Regulations covered airworthiness standards, crew

certification and medical standards, aircraft operating

requirements, and even included a "general federal standard of

care for aircraft operators, requiring that 'no person may

operate an aircraft in a careless or reckless manner so as to

endanger the life or property of another.'" 508 F.3d at 472

9

1  (quoting 14 C.F.R. § 91.13(a)(2003)[2]). The regulations included

2  provisions covering warnings and instructions to be given to

3  passengers. Id. at 472-73. The Montalvo court concluded that the

4  comprehensiveness of the regulations demonstrated that the

5  administrator had exercised his authority to regulate aviation

6  safety to the exclusion of the states. The court reasoned that it

7  absent implied preemption, each state would be free to require

8  any announcement it wished on all planes arriving in or departing

9  from its territory, or to impose liability for the violation of

10 any jury's determination that a standard the jury deemed

11 reasonable had been violated; this would result in a "crazyquilt

12 effect" from a patchwork of state laws, and would have rendered

13 the sufficiency of the warnings given dependent upon the location

14 where each passenger on each flight was likely to file suit; this

15 was inconsistent with the FAA. Id. at 473.

16     In Montalvo, the Ninth Circuit Court of Appeal expressly

17 approved the holding of the Third Circuit in Abdullah v. American

18 Airlines, Inc., 181 F.3d 363 (3d Cir. 1999), a case that involved

19 a failure to warn, and/or a failure to exercise reasonable care,

20 concerning anticipated air turbulence. The court in Abdullah held

21 that federal law preempted the entire field of aviation safety

22 and provided the standard of care. Montalvo, 508 F.3d at 473-74.

23 Citing Skysign International, Inc. v. City and County of

24 Honolulu, 276 F.3d 1109, 1116 (9th Cir. 2002) (holding that the

25 state could still regulate aerial advertising that was

26

27     [2] Title 14 C.F.R. § 91.13(a) (2006) likewise provided: (2) Aircraft operations for the purpose of air
   navigation. No person may operate an aircraft in a careless or reckless manner so as to endanger the life or property
28 of another.

1 distracting and potentially dangerous to persons on the ground),

2 the court in Montalvo noted that although Congress might not have

3 acted to occupy exclusively all of air commerce, it had clearly

4 indicated its intent to be the sole regulator of aviation safety.

5 Id. at 474.

6     Although the Court finds no reported case within this

7 district that is identical with the present case, courts in the

8 Third Circuit have followed Abdullah and have held that the FAA

9 preempts state law concerning aviation safety standards in a suit

10 for damages for injuries sustained by a disabled passenger due to

11 failure to assist the passenger while disembarking from a

12 commercial airplane, Elassaad v. Independence Air, Inc., 2008 WL

13 3895566 (E.D.PA 2008), and for damages for injuries sustained

14 from belongings falling from an overhead compartment on to a

15 passenger allegedly due to careless operation and improper

16 maintenance of overhead compartments, Levy v. Continental

17 Airlines, Inc., 2007 WL 2844592 (E.D.PA 2007). It is reasonable

18 to conclude that the concept of aviation safety is broad enough

19 to include safety within the passenger compartment during a

20 flight and when deplaning as well as safety in the control of the

21 flight of the airplane itself. The Court is thus bound by

22 Montalvo to hold that the FAA preempts state standards.

23     Further, the Court rejects Plaintiff's argument that the

24 Ninth Circuit's holding in Charas v. Transworld Airlines, Inc.,

25 160 F.3d 1259, 1265 (9th Cir. 1998) requires the Court to find

26 that there is no preemption by the FAA. The Charas case concerned

27 a provision of the Airline Deregulation Act of 1978 (ADA), then

28 found in 49 U.S.C. § 1305(a)(1), and later incorporated into the

1  Fedeal Aviation Administration Authorization Act of 1994 (FAAAA),
2  49 U.S.C. 41713(b), which provided that no state should enact or
3  enforce any law or regulation relating to the "rates, routes, or
4  service of any air carrier...." <u>Charas</u>, 160 F.3d at 1262. The
5  court in <u>Charas</u> held that "service" referred only to prices,
6  schedules, origins, and destinations of point-to-point transport
7  of passengers or cargo, and not to in-flight assistance.

8      In the present case, Defendant rests its preemption argument
9  on field preemption by the FAA, not on the express preemption
10 provision of the ADA, which has been interpreted as an
11 essentially economic measure; <u>Charas</u> is inapposite. The Court
12 further notes that in <u>Montalvo</u>, a claim of preemption pursuant to
13 the ADA "services" clause was made in connection with claimed
14 unsafe seating configuration. The court in <u>Montalvo</u> noted <u>Charas</u>,
15 and it further specified that pursuant to decisions of the United
16 States Supreme Court, only claims that did not significantly
17 impact federal deregulation survive the express preemption clause
18 of the ADA. The court remanded the claim for further development
19 to determine whether seat reconfiguration would significantly
20 impact federal deregulation. 160 F.3d at 475-76. Thus, it is
21 clear that the holding in <u>Charas</u> does not have the legal effect
22 urged by Plaintiff.

23     The Court understands, and it is clear that Defendant also
24 understands, that Plaintiff's action is based in significant part
25 on allegedly careless conduct on the part of the steward present
26 at deplaning.

27     V. <u>The Standard of Care</u>
28     The parties disagree on the legal effect of preemption in

1 the present case. The moving Defendant argues that because there

2 are specific regulations concerning stewards' interaction with

3 disabled passengers during deplaning, but there are no

4 regulations concerning stewards' interaction with able-bodied

5 passengers during deplaning, there is no duty to able-bodied

6 passengers to undertake any affirmative conduct during deplaning.

7 Defendants thus in effect assert that there is no residual

8 standard of care that would govern the behavior in question, and

9 thus there can be no duty or breach of duty by Defendant.

10 Plaintiff, however, argues that in the absence of a specific

11 regulation, the more general standard of care set forth by 14

12 C.F.R. § 91.13(a) applies.

13      In Montalvo, the Court noted in the course of its analysis

14 of implied preemption that although the regulations included a

15 general federal standard of care for aircraft operators, 508 F.3d

16 at 472, specific regulations governed the warnings and

17 instructions to be given to airline passengers. Provisions

18 concerning signs and placards relating to smoking, seatbelt

19 fastening, oral briefings, and passenger safety briefing and

20 briefing cards that in turn governed seat position were held to

21 be sufficiently pervasive to demonstrate the administrator's

22 authority to regulate aviation safety to the exclusion of the

23 states), id. at 472-73. Because there was no federal requirement

24 that airlines warn passengers about the risk of developing DVT,

25 Plaintiff's negligence claim concerning failure to warn of DVT

26 failed as a matter of law. Id. at 474.

27      The present case does not involve a claim of a failure to

28 engage in the affirmative conduct of warning a passenger about

1  flight-related dangers. Instead, the present case involves the

2  safety of a passenger during the process of deplaning. The

3  parties have represented to the Court that there are no related

4  regulations except those submitted to the Court by the parties.

5      Defendant urges the Court to consider the significance of

6  regulations promulgated pursuant to the Air Carrier Access Act of

7  1986, 49 U.S.C. § 41705 (ACAA), including 14 C.F.R. § 382.39,

8  which provides that carriers shall provide assistance requested

9  by or on behalf of a qualified individuals with a disability, or

10 offered by air carrier personnel and accepted by qualified

11 individuals with a disability, in enplaning and deplaning; and 14

12 C.F.R. § 382.7(a)(2), which states that a carrier shall not,

13 directly or through contractual licensing or other arrangements,

14 require an individual with a disability to accept special

15 services, including but not limited to preboarding, not requested

16 by the passenger.

17     In Elassaad v. Independence Air, Inc., 2008 WL 3895566

18 (E.D.Pa August 20, 2008), a passenger had an above-the-knee

19 amputation of the right leg and relied on two crutches to walk;

20 he did not use a wheelchair. He fell when disembarking from a

21 commercial airplane and prosecuted a claim of a negligent failure

22 of assistance in disembarking the airplane, including making

23 available all appropriate safety measures and devices. The

24 plaintiff did not ask for, and was not offered, assistance in

25 deplaning; however, the plaintiff testified that he would have

26 accepted an offer of assistance if he had been informed that a

27 ramp and wheelchair were available to assist in deplaning, and he

28 suggested that defendant was negligent in not furnishing him with

14

1  information concerning the ramp and wheelchair. The defendant
2  airline asserted that it was required to provide the plaintiff
3  with assistance only if he requested it, or if one of the flight
4  crew offered assistance, and the offer was accepted by the
5  plaintiff. Relying on Abdullah, the court concluded that 14
6  C.F.R. § 91.13 provided the applicable standard of care only when
7  no specific provision provided the standard. Elassaad, 2008 WL
8  3895566, at pp. *1-*2. The regulations governing assistance to
9  disabled passengers on deplaning were held to provide the
10 standard of care even though they were promulgated with the joint
11 objectives of achieving safety and prohibiting discrimination in
12 providing air transportation; further, even if there had been no
13 specific regulation, the plaintiff had not established an
14 alternate standard of care of breach thereof. The plaintiff had
15 not pointed to case law or expert testimony to establish that the
16 failure of the defendant to offer assistance to the plaintiff
17 constituted careless or reckless conduct. Id. at p. *2.
18 Accordingly, based on the undisputed facts, the defendant was
19 entitled to summary judgment. Id. at *2.

20     Defendant argues that just as in Montalvo the inclusion in
21 the regulations of requirements for specific, affirmative
22 warnings to be given to all passengers evinced an intention on
23 the part of Congress otherwise not to require additional pre-
24 flight warnings, the inclusion of regulations concerning the
25 extent of assistance required to be extended to qualified persons
26 with disabilities upon deplaning evinced an intention not to
27 require that any other type of assistance be given to able-bodied
28 passengers on deplaning.

15

1     The Court rejects Defendant's attempt to analogize the
2  regulatory context in Elassaad to that presented in the present
3  case. Regulation of the extent of deplaning assistance required
4  to be given to qualified individuals with a disability does not
5  necessarily bear on the extent of assistance required to be given
6  to able-bodied passengers. The ACAA is primarily concerned with
7  prohibiting discrimination by any air carrier against an
8  otherwise qualified individual in the provision of air
9  transportation. 49 U.S.C. § 41705(a). Review of the regulations
10 promulgated thereunder appearing at 14 C.F.R., Part 382, §§ 382.1
11 through 382.70 (2006) reveals that the forms of discrimination
12 expressly prohibited by § 382.7 include not only excluding a
13 qualified individual with a disability from, or denying the
14 benefit, of any air transportation or related services that are
15 available to others, but also requiring individuals to accept
16 special services, including but not limited to preboarding, not
17 requested by the passenger, 14 C.F.R. § 382.7(a)(2), or,
18 generally, requiring individuals to accept separate services that
19 are distinct from those available to others, 14 C.F.R. §
20 382.7(a)(3). In this instance there was presented the relatively
21 rare regulatory circumstance of addressing but needed to limit
22 specific, affirmative types of assistance that might be
23 volunteered.

24     Further, just as a matter of common sense, accessibility of
25 aircraft takes on special significance with respect to qualified
26 individuals with a disability. By definition, the status of an
27 individual with a disability carries with it impairments of
28 activities such as caring for oneself, performing manual tasks,

walking, seeing, hearing, speaking, breathing, etc. 14 C.F.R. §

382.5(b). Impairment of these functions necessarily raises

concerns regarding the ability of impaired persons to enter and

exit airplanes safely. Detailed regulations were promulgated

concerning requirements concerning aircraft and airport

facilities to ensure accessibility, mobility, and functionality

of impaired persons within the facilities. 14 C.F.R. §§ 382.21-

382.23. The regulations also address the circumstances in which

it is permissible to refuse transportation on account of a

disability, § 382.31; the circumstances in which advance notice

of a request for services is required, § 382.33; the propriety of

requiring attendants for passengers, §382.35; and requirements

concerning seat assignment and accommodations, §§ 382.37-38. The

section regarding the provision of services and equipment

addressed in <u>Elassaad</u>, namely, § 382.39, states:

> Carriers shall ensure that qualified individuals
> with a disability are provided the following services
> and equipment:
> (a) <u>Carriers shall provide assistance requested by
> or on behalf of qualified individuals with a
> disability, or offered by air carrier personnel and
> accepted by qualified individuals with a disability, in
> enplaning and deplaning</u>. The delivering carrier shall
> be responsible for assistance in making flight
> connections and transportation between gates.
> (1) This assistance shall include, as needed,
> the services personnel and the use of ground
> wheelchairs, boarding wheelchairs, on-board wheelchairs
> where provided in accordance with this part, and ramps
> or mechanical lifts.
> (2) Boarding shall be by level-entry loading
> bridges or accessible passenger lounges, where these
> means are available. Where these means are unavailable,
> assistance in boarding aircraft with 30 or fewer
> passenger seats shall be provided as set forth in §
> 382.40, and assistance in boarding aircraft with 31 or
> more seats shall be provided as set forth in § 382.40a.
> In no case shall carrier personnel hand-carry a
> passenger in order to provide boarding or deplaning
> assistance (i.e., directly pick up the passenger's body

in the arms of one or more carrier personnel to effect a change of level that the passenger needs to enter or leave the aircraft). Hand-carrying of passengers is permitted only for emergency evacuations.

(3) Carriers shall not leave an individual with a disability unattended in a ground wheelchair, boarding wheelchair, or other device, in which the passenger is not independently mobile, for more than 30 minutes.

(b) <u>Carriers shall provide services within the aircraft cabin as requested by or on behalf of individuals with a disability, or when offered by air carrier personnel and accepted by individuals with a disability as follows:</u>

<u>(1) Assistance in moving to and from seats, as part of the enplaning and deplaning processes;</u>

(2) Assistance in preparation for eating, such as opening packages and identifying food;

(3) If there is an on-board wheelchair on the aircraft, assistance with the use of the on-board wheelchair to enable the person to move to and from a lavatory;

(4) Assistance to a semiambulatory person in moving to and from the lavatory, not involving lifting or carrying the person; or

(5) Assistance in loading and retrieving carry-on items, including mobility aids and other assistive devices stowed on board in accordance with § 382.41.

(c) Carriers are not required to provide extensive special assistance to qualified individuals with a disability. For purposes of this section, extensive special assistance includes the following activities:

(1) Assistance in actual eating;

(2) Assistance within the restroom or assistance at the passenger's seat with elimination functions;

(3) Provision of medical services. (Emphasis added.)

This section thus is a relatively comprehensive definition of the requirements for the most likely, specialized services that would need to be given to qualified individuals. It clearly appears to be an attempt to define the duty of a carrier towards qualified individuals with a disability in circumstances where the nature and extent of any functional limitations of the passenger, and the scope of any need for assistance, are likely to be significant and yet potentially unclear to the airline. Further,

1  the regulation addresses the situation that can arise with a

2  handicapped person wherein the person needs and desires no

3  assistance, but the carrier might be concerned or mistaken

4  concerning that need. The measure puts the responsibility on the

5  passenger to notify the carrier of the condition which requires

6  assistance if it is not sufficiently evident otherwise to have

7  prompted an offer of assistance. The Court does not infer from

8  this provision that all passengers, able-bodied or not, must

9  therefore in all circumstances request assistance with deplaning

10 if assistance is needed. It is not reasonably interpreted as an

11 implied statement regarding the standard of care for assistance

12 of fully able-bodied passengers with deplaning.

13      Title 14 C.F.R. § 91.1 states that Subpart A of Part 91 of

14 the regulations prescribes rules governing the operation of

15 aircraft within the United States, and that it applies to each

16 person on board an aircraft being operated unless otherwise

17 specified. 14 C.F.R. § 91.1(a), (c). Title 14 C.F.R. § 1.1

18 defines the term "operate" as meaning to use, cause to use, or

19 authorize to use aircraft, including the piloting of the

20 aircraft. Title 14 C.F.R. § 1.3(b)(3) provides that "includes"

21 means "includes but is not limited to." Title 14 C.F.R. § 91.13

22 provides:

23          (a) Aircraft operations for the purpose of air
           navigation. No person may operate an aircraft in a
24         careless or reckless manner so as to endanger the life
           or property of another.
25          (b) Aircraft operations other than for the purpose
           of air navigation. No person may operate an aircraft,
26         other than for the purpose of air navigation, on any
           part of the surface of an airport used by aircraft for
27         air commerce (including areas used by those aircraft
           for receiving or discharging persons or cargo), in a
28         careless or reckless manner so as to endanger the life

or property of another.

The Court concludes that there is a federal standard of care that does not necessarily preclude a claim involving a duty affirmatively to help a passenger with deplaning. The parties have not submitted any specific regulations governing the standard of care, but it appears that in the absence of other specific provisions, 14 C.F.R. § 91.13 applies.

VI. Remedy

The complaint presently on file clearly refers to a negligence claim; thus, Defendant has always had notice of the general nature of the claim. However, the complaint refers in the main to the failure to exercise the highest degree of care, a state standard that is preempted in the present case.[3] Thus, the present complaint does not appear to allege a duty and breach of duty corresponding to a federal standard of care. The relief sought by the moving defendant was dismissal to the extent that the state standard of care was preempted by a federal standard.

Title 49 U.S.C. § 40120(c) provides that a remedy under that part is in addition to any other remedies provided by law. The court in Abdullah found that state safety standards are preempted by the FAA, but it relied on the statutory savings clause as evincing an intent to preempt only the standard of care, but not to eliminate state remedies. See, Abdullah v. American Airlines,

---

[3] The only language that has come to the attention of the Court that denotes any elevated expectation of safety appears in 49 U.S.C. § 44702(b), concerning the issuance by the administrator of the Federal Aviation Administration of certificates for various aspects of air commerce, in which it is stated that when issuing a certificate under the chapter, the administrator shall consider the duty of an air carrier to provide service with the "highest possible degree of safety in the public interest." This language does not appear to prescribe any operational standard.

<u>Inc.</u>, 181 F.3d at 374-75 (relying also on statutory authorization of the secretary of transportation to require airlines to maintain liability insurance for injury or death of a person resulting from the operation or maintenance of aircraft, 49 U.S.C. § 41112(a)).

This approach is consistent with that taken in <u>Silkwood v. Kerr-McGee Corp.</u>, 464 U.S. 238, 249-56 (1984), in which it was held that federal preemption of safety regulation of nuclear power development did not evince an intention to disallow resort to state-law remedies by persons suffering injuries from radiation in a power plant because there was no federal remedy provided, and because other federal enactments comprehensively regulated safety, provided a limit of liability for such accidents, and set forth a scheme for indemnification of operators of nuclear facilities for losses suffered from claims by injured persons. It was held that the intent of Congress was thus demonstrated to be that state tort <u>remedies</u> would survive.

Here, although the safety standards are set by federal law, federal law is also reasonably understood as expressly providing that state-law remedies for violation of such standards are not preempted and are preserved. The Court thus concludes that a claim remains that is informed by a federal standard of care; however, to the extent that Plaintiff's negligence claim states state standards, it must be dismissed.

Plaintiff has indicated an intention to seek leave to amend. In a supplemental briefing order, the parties were requested to be ready to discuss at the hearing on the motion any claim of prejudice. No claim of prejudice has been made in this case, and

the Court discerns no prejudice in the form of a negative effect on the ultimate ability of the parties to ascertain the truth or litigate the case on the merits. There has been delay, but, as previously noted, the moving defendant is significantly responsible for the delay.

Therefore, being mindful of the parties' entitlement to fairness, and of the need for orderly and efficient progress to trial, and further considering the absence of any claim of prejudice, the Court will permit amendment of the complaint and rescheduling of the case to permit the orderly completion of expert discovery, the consideration of any motions necessitated by amendment of the complaint, and the preparation of adequate jury instructions.[4]

VII. <u>Disposition</u>

Accordingly, it IS ORDERED that

1) Defendant's motion for judgment on the pleadings IS GRANTED IN PART and DENIED IN PART; and

2) Plaintiff's claim for negligence IS DISMISSED WITH LEAVE TO AMEND insofar as it was based on state standards of care; and

3) The parties ARE HEREBY ORDERED TO MEET AND CONFER in preparation for a telephonic status conference with the Court on Friday, November 7, 2008, at 3:30 p.m.; Counsel for Defendant ARE DIRECTED to coordinate a conference call with the Court, (559) 499-5690; it is anticipated that counsel shall be ready to discuss the vacating of the trial presently set to begin on

---

[4]

At the hearing on the motion, the parties noted that expert discovery remained to be completed after the Court determined the instant motion. The Court anticipates that upon amendment of the complaint, additional expert discovery may be required, although the Court does not intend to reopen discovery for other purposes.

November 17, 2008, as well, of course, of the hearing on the several motions in limine, presently calendared for hearing on Monday, November 10, 2008; and counsel should be ready to discuss a revised schedule for this litigation.

IT IS SO ORDERED.

**Dated:   November 5, 2008            /s/ Sandra M. Snyder**
                                    UNITED STATES MAGISTRATE JUDGE